Tahanie A. Aboushi, Esq. (TA-6529)
The Aboushi Law Firm, PLLC
1441 Broadway, Fifth Floor
New York, NY 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
J.H.                                                                                Docket No.
                      Plaintiff,

    -against-                                                              **COMPLAINT**
                                                                 TRIAL DEMANDED BY JURY

William J. Bratton, in his official capacity as
Commissioner of the New York City Police Department
("NYPD"), The New York Police Department, The City of
New York, New York City Police Officers "John Does 1-
10", and Supervisory, Training and Policy Personnel
Jane/John Does 10-20.

                      Defendants,
-----------------------------------------------------------------------X

Plaintiff, J.H. by and through her attorneys, THE ABOUSHI LAW FIRM, PLLC, complaining of the Defendants, respectfully allege, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought by Plaintiff, J.H., for the forcible removal of her veil, a religious garment known as the Hijab for a public photograph taken during post arrest processing.

2. The City of New York and the New York Police Department discretionarily decide whether or not women of the Muslim faith who cover their hair with a headscarf, must remove their scarf for the "mug" shot.

3. The City of New York and the New York Police Department removed Plaintiff's religious garments in violation of her constitutional rights and in violation of the New York Police Department Patrol Guide Interim Order 29 ("Interim Order 29").

4. Plaintiff brings this action for injunctive and declaratory relief against the Defendants and for monetary damages against the Defendants to redress the violation of Plaintiff's civil and religious rights under the United States Constitution and the Constitution of the State of New York.

5. J.H. brings the instant suit for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

6. A Notice of Claim was filed and served on and a 50-h was subsequently held on February 03, 2016.

## JURISDICTION

7. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

8. This Court has supplemental jurisdiction over claims under the laws of New York State and of the City of New York under 28 U.S.C. §1391(b).

9. This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 1367, 28 U.S.C. §§2201 and 2202 as well as Rules 57 and 65 of the Federal Rules of Civil Procedure.

## VENUE

10. Venue is proper in the Eastern District of New York under 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in the Eastern District.

## THE PARTIES

11. Plaintiff is a resident of Kings County, State of New York.

12. Defendant William J. Bratton is the Commissioner of the New York City Police Department as such, is responsible for overseeing the agency's operations, promulgating and enforcing rules and regulations and supervising the conduct of the agency's employees.

13. Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

14. Defendant City of New York maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

15. That at all times hereinafter mentioned, Defendant Police Officers "John Does 1-10" (Collectively, "Defendant Police Officers") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

16. Plaintiff will amend this complaint to name the Defendant "John Doe" Police Officers as

their identities can be established to a reasonable certainty.

17. That at all times relevant to this action, the Defendant Police Officers either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

18. Each and all of the acts of the Defendant Police Officers alleged herein were done by said defendants while acting within the scope of their employment by Defendant City of New York.

19. Each and all of the acts of the Defendant Police Officers alleged herein were done by said defendants while acting in furtherance of their employment by Defendant City of New York.

### STATEMENT OF FACTS

20. J.H. is a female who practices Islam and dawns the Hijab, a veil that covers her hair in accordance with the teachings of Islam.

21. In response to a complaint, J.H. was asked to go to the 71st Precinct on September 12, 2015. J.H. entered the police station at approximately 6:00 p.m. and was asked to put her hands behind her back.

22. J.H. was thereafter arrested and processed. Plaintiff was photographed with her veil on while at the 71st precinct.

23. Thereafter, J.H. was placed in a holding cell. J.H. was then taken out of the holding cell to accommodate male detainees. J.H. was instead handcuffed to a bench from 7:00 p.m. to 6:00 a.m.

24. On September 13, 2015, at approximately 6:00 a.m. J.H. was transferred to Central Booking.

25. Upon arriving, J.H. was taken to the photographing area where approximately ten (10) police officers, all of whom were male and five (5) detainees, also all male were present.

26. Plaintiff, still veiled, was directed by an officer to stand in a certain location in the well of the holding area so that her photograph could be taken.

27. The photographing officer then told Plaintiff's arresting/escorting officer that J.H. must remove her veil.

28. The arresting/escorting officer then told J.H. to remove her veil.

29. J.H. told both the arresting/escorting officer and the photographing officer that she could not remove her veil due to her religious obligations.

30. J.H. told the officers she must keep it on and that it could not be removed in the presence of men.

31. In response the photographing officer told J.H. that her religion did not matter and whether she is a Muslim, Christian or Jew, it must come off.

32. J.H. then asked that a female take her photograph in private so that she is not exposed in the presence of men.

33. The photographing officer then told J.H. "what do you think you are here for? A photo shoot?  You are here for grand larceny unless you want to go back to the precinct you have to take that off".

34. The photographing officer insisted J.H. remove her veil and J.H. complied.

35. As J.H. was removing her veil, all of the men stared and made comments.

36. J.H. was violated, embarrassed and humiliated.

5

37. Upon taking her photograph, the photographing officer commented, "Wow, wow, wow" to J.H. referring to her hair.

38. J.H. was then permitted to put her hijab back on.

39. J.H. was visibly upset and humiliated as she cried while putting her veil back on. The male detainees continued to make inappropriate comments and laugh at J.H.'s humiliation and exposure. J.H. was extremely upset and embarrassed.

40. J.H. was then escorted to a medical examiner to ensure that she was in good health. When the medical examiner saw that J.H. looked different than her picture, the medical examiner immediately told J.H. that she should not have been forced to remove her veil and that it was against policy.

41. J.H. was then escorted out and taken to the women's holding cell in Central Booking. Upon arriving J.H. waited for several hours before being taken to the holding cell in court. An officer approached J.H. and asked why she was photographed without her veil. J.H. explained she was forced to remove it for her photograph against her will and in violation of her religion. The officer then informed J.H. that it was improper and in violation of policy. The officer further explained that pursuant to policy, if J.H. did not want to take it off for the picture than she would have to be sent to one police plaza where she could take it off and be photographed by a female officer.

42. The City of New York and the New York Police Department knew or should have known of the discrimination and violation of constitutional rights in forcing Plaintiff to remove her Hijab.

43. After becoming aware several times of the religious sensitivity of the situation, The City of New York and the New York Police Department failed to take any preventative

6

measures to minimize the damage to Plaintiff by forcing her to remove her headscarf in the presence of men and to photograph her without her headscarf on and failed to provide any accommodation.

44. Plaintiff was not shown or directed to any text of any regulation of the New York City Police Department that states that religious garments/gear must be removed for mug shots or other public and/or governmental photographs while at central booking.

45. Upon information and belief, there have been instances where female Muslim women who wear the religious headscarf have been permitted to wear their headscarves during the photograph portion post arrest.

46. There is no legitimate governmental interest in forbidding religious garments/gear to be worn during the time of processing post arrest including mug shots and fingerprinting.

47. There is no legitimate governmental interest in compelling the removal of religious garments/gear during the time of processing post arrest including mug shots and fingerprinting.

48. There is no legitimate governmental interest in compelling civilians to violate their religious convictions by removing religious garments/gear in order to be photographed or otherwise processed by the NYPD.

**Unconstitutional Policy and Practice in the NYPD**

49. At all relevant times prior to March 02, 2015, the City, acting through the NYPD, maintained an ad hoc and subjective policy, custom and practice of whether to Muslim females donning the Hijab are required to remove the Hijab at either the precinct and central booking for post arrest processing photographs.

50. At all relevant times prior to March 02, 2015, the City acting through the NYPD, did not require Muslim Females donning the Hijab to remove their religious head covering for the purpose of being photographed at the precinct and central booking for post arrest processing.

51. At all relevant times prior to March 02, 2015, officers and members of the Photographing unit, were given discretionary authority to require Muslim Females donning the Hijab to remove their religious head covering for the purpose of being photographed at the precinct and central booking for post arrest processing.

52. Upon information and belief, police officers and members of the Photographing Unit of the NYPD have photographed Muslim women donning the Hijab during post arrest processing both at the precinct and central booking while wearing their Hijab.

53. In response to an ongoing law suit filed against the City of New York and the New York Police Department, <u>G.E. v. City of New York</u>, *et al* 12-cv-05967, the NYPD issued Interim Order 29: "Revision to Patrol Guide 208-03, "Arrests-General Processing" and Patrol Guide 208-07, "Photographable offenses"". **Attached hereto as Exhibit A is a fair and accurate copy of Interim Order 29.**

54. Interim Order 29 permits an arrestee's to be taken while wearing religious headgear at the precinct or "command" portion of the arrest processing for the purpose of a "Prisoner Movement Slip".  The arrestee must then be informed that the religious covering must be removed for the official Department photograph taken at the borough Court Section. In the event the arrestee continues to refuse to remove their religious head covering, the Desk Officer must notify Manhattan Court Section if prisoner indicates said refusal. The Desk Officer must ben inform Manhattan Court Section of the gender of the arrestee in

order to have a member of the service of the same gender available to take the official Department photo. The arresting officer is then required to transport the arrestee to the Mass Arrest Processing Center ("MAPC") at One Police Plaza between the hours of 8:00 a.m. and 12:00 a.m. wherein their official Department picture will be taken without the religious head covering. Upon completion hereof, the arrestee will then be transported to the respective borough Court Section.

55. Interim Order 29 further directs that upon a digital photograph being taken at the Command, the arresting officer is to inform the arrestee at the time of refusal that the religious head covering must be removed for the official Department photograph. If the arrestee continues to refuse to remove their religious head covering, the arresting officer must inform the arrestee that their arrest processing may be delayed due to operational requirements incumbent in using the Mass Arrest Processing Center ("MAPC").

56. Upon the allegations pled by Plaintiff herein, and upon information and belief, the NYPD Supervisory Defendants' failure to train, discipline or supervise police officers and members of the Photographing Unit regarding their obligation to inform arrestees of accommodations for those who refuse to remove religious head coverings and their obligation not to force removal of religious head coverings, exhibited gross and wanton deliberate indifference to the constitutional rights of Plaintiff.

**FIRST CLAIM FOR RELIEF**
**U.S. CONST., AMEND. XIV; 42 U.S.C. § 1983**

57. Plaintiff repeats, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

58. Under the Due Process Clause of the Fourteenth Amendment to the United State Constitution, a law or regulation must be drafted with sufficient clarity so as to give

9

persons of ordinary intelligence a reasonable opportunity to know what is proscribed and to provide explicit standards for those who apply the law or regulation.

59. A law or regulation that does not meet these standards is void for vagueness and may be challenged as such by an action under 42 U.S.C. § 1983.

60. A law or regulation that it is so overbroad that it would chill constitutional conduct is unconstitutional on its face and may be challenged as such by an action under 42 U.S.C. § 1983.

61. Interim Order 29 raises constitutional issues in that an arrestee is may face an undetermined prolonged arrest period as a result of their refusal to remove the religious head covering.

62. Interim Order 29 imposes an undue burden on the constitutional rights of arrestees in that the undetermined prolonged arrest may intimidate the arrestee into removing the religious head covering.

63. Interim Order 29 provides no clear guidance or standards as to its enforcement and, in fact, has been enforced in an arbitrary and capricious manner, as demonstrated, inter alia, by the fact it denied J.H. the exceptions described in this Complaint.

64. Since Interim Order 29 provides no clear guidance or standards as to its enforcement and, in fact, as a result, has been enforced in an arbitrary and capricious manner, the Policy is void for vagueness and must be struck down as unconstitutional.

65. Interim Order 29 is virtually limitless in design and application and, accordingly, is likely to chill protected behavior and is therefore unconstitutionally overbroad.

### SECOND CLAIM FOR RELIEF AS TO PLAINTIFF J.H. DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

66. Plaintiff repeats, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

67. All of the aforementioned acts of the Defendant Police Officers, their agents, servants and employees, were carried out under the color of state law.

68. The aforementioned individual Defendants in their capacities as officers carried out the acts complained of, with all of the actual and/or apparent authority attendant thereto.

69. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

70. The conduct alleged to have been committed by Defendants targets religious exercise and violated Plaintiff J.H.'s constitutional right to the free exercise of religion by requiring her to remove her headscarf.

71. Such practice has the principle effect of excluding sincere religious observers such as Plaintiff J.H. Individuals who do not have sincere religious convictions are not subject to removing their religious garments/gear upon command. As a result, Defendants' practice is unconstitutional and violated Plaintiff J.H.'s first amendment rights.

72. The Fourteenth Amendment to the United States Constitution, which prohibits the deprivation of "life, liberty or property without due process of law", guarantees to each civilian in state custody the substantive right to be free from harm and from undue restraints on their liberty.

73. As a result of the above constitutionally impermissible conduct, Plaintiff J.H. was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish,

anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to her reputation and standing within her community.

### THIRD CLAIM UNDER NEW YORK STATE STATUTES
### RELIGIOUS DISCRIMINATION

74. Plaintiff J.H. repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

75. The Defendants' unconstitutional and illegal acts, conditions and practices described herein violate Article I, Section 3 of the Constitution of the State of New York because it does not allow Plaintiff J.H. the free exercise and enjoyment of religious worship as construed by the Courts of New York State.

76. The purported governmental interest in requiring all religious garb to be removed for the purposes of being photographed or otherwise processed post arrest does not justify the violations of fundamental rights afforded to Plaintiff J.H. under the Constitution of the State of New York.

77. As a result of Defendants' impermissible conduct, Plaintiff J.H. demands judgment against Defendants in a sum of money to be determined at trial.

### FOURTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW INTENTIONAL
### INFLICTION OF EMOTIONAL DISTRESS

78. Plaintiff J.H. repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

79. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

80. The aforementioned conduct was committed by employees, servants and/or agents of Defendants while acting within the scope of their employment.

81. The aforementioned conduct was committed by employees, servants and/or agents of Defendants while acting in furtherance of their employment.

82. The aforementioned conduct was unnecessary, intentional and done for the sole purpose of causing severe emotional distress to Plaintiff J.H.

83. As a result of the aforementioned conduct, Plaintiff J.H. suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

84. As a result of Defendants' impermissible conduct, Plaintiff J.H. demands judgment against Defendants in a sum of money to be determined at trial

**FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

85. Plaintiff J.H. repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

86. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

87. The aforementioned conduct was negligent and caused severe emotional distress to Plaintiff J.H.

88. The aforementioned conduct was committed by employees, servants and/or agents of Defendants while acting within the scope of their employment.

89. The aforementioned conduct was committed by employees, servants and/or agents of Defendants while acting in furtherance of their employment.

90. As a result of the aforementioned conduct, Plaintiff J.H. suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock,

fright and loss of freedom.

91. As a result of Defendants' impermissible conduct, Plaintiff J.H. demands judgment against Defendants in a sum of money to be determined at trial

### SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
### NEGLIGENT HIRING AND RETENTION

92. Plaintiff J.H. repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

93. Upon information and belief, Defendants failed to use reasonable care in the hiring and retention of the employees who caused Plaintiff J.H. Hijab to be removed during post arrest processing.

94. Defendants knew, or should have known in the exercise of reasonable care, the propensities of said employees to engage in the wrongful conduct heretofore alleged in this Complaint.

95. As a result of the conduct of Defendants, Plaintiff J.H. sustained, *inter alia*, severe emotional distress, embarrassment, and humiliation, deprivation of their constitutional rights, and special damages.

96. As a result of Defendants' impermissible conduct, Plaintiff J.H. demands judgment against Defendants in a sum of money to be determined at trial

### SEVENTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT TRAINING AND SUPERVISION

97. Plaintiff J.H. repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

98. Upon information and belief, Defendants failed to use reasonable care in the training and supervision of the aforesaid employees who caused Plaintiff J.H. to be harmed.

99. As a result of the conduct of Defendants, Plaintiff J.H. sustained, *inter alia*, severe emotional distress, embarrassment, and humiliation, deprivation of their constitutional rights, and special damages.

100. As a result of Defendants' impermissible conduct, Plaintiff J.H. demands judgment against Defendants in a sum of money to be determined at trial

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff J.H. request that this Court grant the following relief:

a. Empanel a jury to hear all claims triable thereto;

b. Adjudge and declare that the NYPD'S Interim Order 29, and any NYPD policy or practice derived therefrom, violates J.H's constitutional right to freedom of association and, therefore, is unconstitutional;

c. Adjudge and declare that the NYPD'S Interim Order 29, and any NYPD policy or practice derived therefrom, is void for vagueness and, therefore, unconstitutional;

d. Adjudge and declare that the NYPD'S Interim Order 29, and any NYPD policy or practice derived therefrom, is unconstitutionally overbroad;

e. Preliminarily and permanently enjoin Defendants, their agents, officials, employees and all persons acting in concert with them, under color of State law or otherwise from enforcing Interim Order 29;

a. Issue a declaratory judgment declaring that religious attire shall not be removed for the purpose of being photographed at Central Booking ("borough Court Section") without basis;

b. Order Defendants to develop and implement a comprehensive plan for the correction of the unlawful policies, practices, acts and omissions complained of herein and to

    submit this plan to the Court and to the attorneys for the Plaintiff for review and comment before the Court orders the plan including a revision of Interim Order 29;

c. Award Plaintiff compensatory and punitive damages in an amount to be determined at trial against Defendants for violations of federal constitutional rights;

d. Retain jurisdiction in this case until the unlawful conditions, practice, policies, acts and omissions complained of herein no longer exist and this Court is satisfied that they will not recur;

e. Award Plaintiff the costs of this action, including reasonable attorneys' fees and

f. Grant such other and further relief as this Court deems just and proper.

Dated: New York, NY
      April 25, 2016

                                    Respectfully Submitted,

                                    /S/
                              THE ABOUSHI LAW FIRM, PLLC
                              By: Tahanie A. Aboushi, Esq. (TA6529)
                              *Attorneys for Plaintiff*
                              1441 Broadway Suite 5036
                              New York, NY 10018
                              Telephone: (212) 391-8500
                              Facsimile: (212) 391-8508
                              tahanie@aboushi.com