UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
J.H.                                                              Civil Docket No.: 16-cv-2044
                    Plaintiff,
     -against-                                                    SECOND AMENDED
                                                                 COMPLAINT

William J. Bratton, in his official capacity as
Commissioner of the New York City Police Department,       TRIAL DEMANDED BY JURY
The City of New York, New York City Police Officers
Gene Polyak, Jose Quinones, Ivan Williams and
"John Does 1-10", and Supervisory, Training and Policy
Personnel Jane/John Does 10-20.
                    Defendants,
------------------------------------------------------------------X

Plaintiff, J.H. by and through her attorneys, THE ABOUSHI LAW FIRM, PLLC, complaining of the Defendants, respectfully allege, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought by Plaintiff, J.H., for the forcible removal of her Hijab, a religious garment worn to cover her hair, for a public photograph taken during post-arrest processing.

2. The City of New York and the Unidentified Individual Officers forced Plaintiff to remove her Hijab during post-arrest processing and without accommodation for her religious restrictions in violation of the United States Constitution and the New York Police Department Patrol Guide Interim Order 29 ("Interim Order 29").

3. J.H. brings the instant suit for compensatory damages, punitive damages and attorney's fees pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq*., 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights, as said rights are secured by said statutes and the Constitution of the United States.

4. A Notice of Claim was filed and served on and a 50-h deposition was subsequently held on February03, 2016.

## JURISDICTION

5. This action is brought pursuant to RLUIPA, 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

6. This Court has supplemental jurisdiction over claims under the laws of New York State and of the City of New York under 28 U.S.C. §1391(b).

7. This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §1367, 28 U.S.C. §§2201 and 2202 as well as Rules 57 and 65 of the Federal Rules of Civil Procedure.

## VENUE

8. Venue is proper in the Eastern District of New York under 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in the Eastern District.

## JURY DEMAND

9. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

10. Plaintiff is a resident of Kings County, State of New York.

11. Defendant William J. Bratton is the Commissioner of the New York City Police

Department and as such, is responsible for overseeing the agency's operations, promulgating and enforcing rules and regulations and supervising the conduct of the agency's employees.

12. Defendant Gene Polyak was an officer and an employee of the New York Police Department at all times hereinafter mentioned.

13. Defendant Jose Quinones is an officer and an employee of the New York Police Department at all times hereinafter mentioned.

14. Defendant Ivan Williams is an officer and an employee of the New York Police Department at all times hereinafter mentioned

15. Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

16. Defendant City of New York maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

17. That at all times hereinafter mentioned, Defendant Police Officers "John Does 1-10" (Collectively, "Defendant Police Officers") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

18. That at all times hereinafter mentioned, Defendant Supervisory, Training and Policy Personnel Jane/John Does 10-20 were duly sworn employees of the New York Police Department and the City of New York and were acting according to their official duties.

19. Plaintiff will amend this complaint to name the Defendant "John Doe" Police Officers and Supervisory, Training and Policy Personnel Jane/John Does 10-20 as their identities can be established to a reasonable certainty.

20. That at all times relevant to this action, the Defendant Police Officers and Defendant Supervisory, Training and Policy Personnel either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

21. Each and all of the acts of the Defendant Police Officers and Defendant Supervisory, Training and Policy Personnel alleged herein were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

22. Each and all of the acts of the Defendant Police Officers and Defendant Supervisory, Training and Policy Personnel alleged herein were done by said Defendants while acting in furtherance of their employment by Defendant City of New York.

## STATEMENT OF FACTS

23. J.H. is a female who practices Islam and dons the Hijab, a veil that covers her hair in accordance with the teachings of Islam.

24. In response to a complaint, J.H. was asked to go to the 71$_{st}$ Precinct on September 12, 2015. J.H. entered the police station at approximately 6:00 p.m. and was asked to put her hands behind her back.

25. J.H. was thereafter arrested and processed. Plaintiff was photographed wearing her Hijab while at the 71$_{st}$ precinct.

26. Thereafter, J.H. was placed in a holding cell. J.H. was then taken out of the holding cell

to accommodate male detainees. J.H. was instead handcuffed to a bench from 7:00 p.m. to 6:00 a.m.

27. On September 13, 2015, at approximately 6:00 a.m. J.H. was transferred to Central Booking.

28. Upon arriving, J.H. was taken to the photographing area where approximately ten (10) police officers, all of whom were male and five (5) detainees, also all male were present.

29. Plaintiff, still veiled, was directed by officer Ivan Williams ("Williams") to stand in a certain location in the well of the holding area so that her photograph could be taken.

30. Williams then told Plaintiff's arresting/escorting officers, Jose Quinones ("Quinones") and Gene Polyak ("Polyak"), that J.H. must remove her hijab.

31. Officers Quinones and Polyak directed J.H. to remove her hijab.

32. J.H. told officers Quinones and Polyak that she could not remove her hijab due to her religious obligations.

33. J.H. told the officers Quinones and Polyak she must keep it on and that it could not be removed in the presence of men.

34. J.H. then asked them for a female officer take her photograph in private area so that she would not be exposed in the presence of men.

35. The Officer Williams then told J.H. "what do you think you are here for? A photo shoot? You are here for grand larceny unless you want to go back to the precinct you have to take that off."

36. The Officers Williams, Polyak and Quinones insisted J.H. remove her hijab and J.H. complied while in the presence of multiple male police officers and male detainees.

37. As J.H. was removing her hijab, all of the men stared and made comments including

officers Williams, Quinones and Polyak.

38. J.H. was violated, embarrassed and humiliated.

39. Upon taking her photograph, Defendant Williams commented, "Wow, wow, wow" to J.H. referring to her hair.

40. J.H. was then permitted to put her hijab back on.

41. J.H. was visibly upset and humiliated as she cried while putting her veil back on. The male detainees continued to make inappropriate comments and laugh at J.H.'s humiliation and exposure. J.H. was extremely upset and embarrassed.

42. J.H. was then escorted to a medical examiner to ensure that she was in good health. When the medical examiner saw that J.H. looked different than her picture, the medical examiner immediately told J.H. that she should not have been forced to remove her veil and that it was against policy.

43. J.H. was then escorted out and taken to the women's holding cell in Central Booking. Upon arriving J.H. waited for several hours before being taken to the holding cell in court. An officer approached J.H. and asked why she was photographed without her veil. J.H. explained she was forced to remove it for her photograph against her will and in violation of her religion. The officer then informed J.H. that it was improper and in violation of policy. The officer further explained that pursuant to policy, if J.H. did not want to take it off for the picture than she would have to be sent to one police plaza where she could take it off and be photographed by a female officer.

44. The Defendants knew or should have known of the violation of Plaintiff's statutory and constitutional rights in failing to provide her with accommodations for her religious beliefs and instead forcing her to remove her Hijab in the presence of men.

6

45. After becoming aware several times of the religious sensitivity of the situation, Defendants Polyak and Quinones failed to take any preventative measures to minimize the damage to Plaintiff by forcing her to remove her Hijab in the presence of men and failed to provide any accommodation for her religious beliefs.

46. There is no legitimate governmental interest in compelling the removal of religious garments/gear during the time of processing post arrest including mug shots and fingerprinting without providing for the accommodations of religious beliefs.

47. There is no legitimate governmental interest in compelling civilians to violate their religious convictions by removing religious garments/gear in order to be photographed or otherwise processed by the NYPD without providing for accommodations thereof.

**Unlawful Policy and Practice in the NYPD**

48. At all relevant times prior to March 02, 2015, the City, acting through the NYPD, maintained an ad hoc and subjective policy, custom and practice of whether to require Muslim females donning the Hijab to remove the Hijab at both the Precinct and Central Booking locations for post-arrest processing photographs.

49. At all relevant times prior to March 02, 2015, the City acting through the NYPD, did not require Muslim Females donning the Hijab to remove their religious head covering for the purpose of being photographed at the Precinct and Central Booking locations for post-arrest processing.

50. At all relevant times prior to March 02, 2015, officers and members of the Photographing unit, were given discretionary authority to require Muslim Females donning the Hijab to remove their religious head covering for the purpose of being photographed at the precinct and central booking for post-arrest processing.

7

51. Upon information and belief, police officers and members of the Photographing Unit of the NYPD have photographed Muslim women donning the Hijab during post-arrest processing both at Precinct and Central Booking locations while wearing their Hijab.

52. In response to an ongoing law suit filed against the City of New York and the New York Police Department, G.E. v. City of New York et al., 12-cv-05967, the NYPD issued Interim Order 29: "Revision to Patrol Guide 208-03, "Arrests-General Processing" and Patrol Guide 208-07, "Photographable offenses." Attached hereto as Exhibit A is a fair and accurate copy of Interim Order 29.

53. Interim Order 29 permits an arrestee's photograph to be taken while wearing religious headgear at the precinct or "command" portion of the arrest processing for the purpose of a "Prisoner Movement Slip." The arrestee must then be informed that the religious covering must be removed for the official Department photograph taken at the borough Court Section. In the event the arrestee continues to refuse to remove their religious head covering, the Desk Officer must notify Manhattan Court Section if prisoner indicates said refusal. The Desk Officer must then inform Manhattan Court Section of the gender of the arrestee in order to have a member of the service of the same gender available to take the official Department photo. The arresting officer is then required to transport the arrestee to the Mass Arrest Processing Center ("MAPC") at One Police Plaza between the hours of 8:00 a.m. and 12:00 a.m. wherein their official Department picture will be taken without the religious head covering. Upon completion thereof, the arrestee will then be transported to the respective borough Court Section.

54. Interim Order 29 further directs that upon a digital photograph being taken at the Command, the arresting officer is to inform the arrestee at the time of refusal that the

8

religious head covering must be removed for the official Department photograph. If the arrestee continues to refuse to remove their religious head covering, the arresting officer must inform the arrestee that their arrest processing may be delayed due to operational requirements incumbent in using the Mass Arrest Processing Center ("MAPC").

55. Upon the allegations pled by Plaintiff herein, and upon information and belief, the NYPD Supervisory Defendants' failure to train, discipline or supervise police officers and members of the Photographing Unit regarding their obligation to inform arrestees of accommodations for those who refuse to remove religious head coverings and their obligation not to force removal of religious head coverings, exhibited gross and wanton deliberate indifference to the constitutional rights of Plaintiff.

## FIRST CLAIM FOR RELIEF
## NEGLIGENT TRAINING UNDER 42 U.S.C. § 1983

56. Plaintiff repeats, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

57. Defendants, City of New York and the NYPD policy makers, training and policy personnel, failed to train its officers, including the individual defendant officers named herein, Supervisory, Training and Policy Personnel named herein, with respect to the religious accommodation procedure of Interim Order 29.

58. In promulgating, Interim Order 29, Defendants, City of New York and the NYPD policy makers, training and policy personnel, knew to a degree of moral certainty that their employees would confront the given situation that arose in this Complaint, namely, that an arrestee like Plaintiff would be prohibited from removing her Hijab in the presence of men.

9

59. Defendants City of New York and the NYPD policy makers, training and policy personnel, created Interim Order 29 in response to litigation resulting from the history of NYPD employees mishandling situations identical to that of Plaintiff herein.

60. As a result of Defendants City of New York and the NYPD's failure to train its employees, Plaintiff's constitutional rights were violated.

61. That by reason of the aforesaid, Plaintiff has been damaged in the sum of money to be determined at trial and seeks compensatory and punitive damages along with attorney's fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**INFLICTION OF EMOTIONAL DISTRESS**
**(Against Individual Police Officer Defendants)**

62. Plaintiff J.H. repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

63. The aforementioned conduct of all Defendants, including officers Ivan Williams, Gene Polyak and Jose Quinones was extreme and outrageous, and exceeded all reasonable bounds of decency.

64. The aforementioned conduct was committed by employees, servants and/or agents of Defendants, including Williams, Polyak and Quinones, while acting within the scope and in furtherance of their employment.

65. The aforementioned conduct was unnecessary, intentional and done for the sole purpose of causing severe emotional distress to Plaintiff J.H.

66. As a result of the aforementioned conduct, Plaintiff J.H. suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

67. As a result of Defendants' impermissible conduct, Plaintiff J.H. demands judgment against the individual Defendants in a sum of money to be determined at trial and at trial and seeks compensatory and punitive damages along with attorney's fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT TRAINING

68. Plaintiff J.H. repeats, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

69. Upon information and belief, Defendants failed to use reasonable care in the training of the aforesaid employees, Defendants Williams, Polyak and Quinones, along with other law enforcement present during the incident described herein, who caused Plaintiff J.H. to be harmed.

70. As a result of the conduct of Defendants, Plaintiff J.H. sustained, inter alia, severe emotional distress, embarrassment, and humiliation, deprivation of her rights, and special damages.

71. As a result of Defendants' impermissible conduct, Plaintiff J.H. demands judgment against Defendants in a sum of money to be determined at trial and seeks compensatory and punitive damages along with attorney's fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
### RLUIPA -- Substantial Burden

72. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

73. Plaintiff has a sincere religious belief that her head, neck, and chest should be covered whenever she is in the presence of "unauthorized" men, which includes any men who are

not her husband, father, or brothers.

74. To comply with this religious belief, Plaintiff wears a hijab whenever she may be in the presence of unauthorized men.

75. Plaintiff sincerely believes that removing the hijab in the presence of unauthorized men is morally wrong and a violation of her religious convictions.

76. Plaintiff sincerely believes that allowing her photograph to be taken when she is not wearing her hijab is morally wrong and a violation of her religious convictions, especially if she knows there is a possibility the photograph will be available to unauthorized men.

77. By forcing Plaintiff to remove her hijab in the presence of unauthorized men for her photograph at Central Booking, Defendants substantially burdened her religious beliefs.

78. By forcing Plaintiff to be photographed knowing that unauthorized men would be given access to the photograph, Defendants substantially burdened her religious beliefs.

79. Defendants had no compelling interest in forcing Plaintiff to remove her hijab in the presence of unauthorized men for her photograph at Central Booking.

80. Defendants have no compelling interest in giving unauthorized men unlimited access to a photograph of her without her hijab.

81. Defendants have less restrictive means of satisfying any compelling interests they may have with respect to securing and utilizing Plaintiff's photograph.

82. Defendants' treatment of Plaintiff thus violates rights secured to her by RLUIPA.

83. Due to Defendants' discriminatory treatment of Plaintiff, she is entitled to injunctive and declaratory relief and damages, without which she has been and will continue to be harmed.

**FOURTH CLAIM FOR RELIEF**
**RLUIPA – Religious Discrimination**

84. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

85. Plaintiff has a sincere religious belief that her head, neck, and chest should be covered whenever she is in the presence of "unauthorized" men, which includes any men who are not her husband, father, or brothers.

86. To comply with this religious belief, Plaintiff wears a hijab whenever she may be in the presence of unauthorized men.

87. On information and belief, other than for photographs, Defendants have allowed other Muslim women to be photographed outside the presence of unauthorized men and have not forced them to remove their religious headgear in the presence of unauthorized men.

88. Defendants substantially burdened Plaintiff's religious beliefs by discriminating against her because of her religious headgear and mocking her for asking that she be treated respectfully and granted a religious accommodation.

89. Defendants' discriminatory treatment of Plaintiff does not further a compelling government interest.

90. Defendants have less restrictive means for carrying out their arrest and booking procedures without discriminating against Plaintiff or degrading her because of her religious beliefs.

91. Defendants' religious discrimination against Plaintiff thus violates rights secured to her by RLUIPA.

92. Due to Defendants' discriminatory treatment of Plaintiff, she is entitled to injunctive and declaratory relief and damages, without which she has been and will continue to be harmed.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff J.H. request that this Court grant the following relief:

a. Empanel a jury to hear all claims triable thereto;

b. Award Plaintiff compensatory and punitive damages for each cause of action alleged herein in an amount to be determined at trial against all Defendants for violations of her federal constitutional and statutory rights;

c. Declare that Defendants' actions in forcibly removing or withholding Plaintiff's hijab from her while in the presence of unauthorized men violated RLUIPA and other constitutional and statutory rights;

d. Declare that giving unauthorized men unlimited access to Plaintiffs' photograph of her without her hijab violates RLUIPA and other constitutional and statutory rights;

e. Issue a permanent injunction enjoining Defendants from forcibly removing or withholding hijabs or other religious garb from religious believers who are detained by Defendants or in Defendants' custody unless Defendants can show a compelling government interest that cannot be satisfied by less restrictive means;

f. Retain jurisdiction in this case until the unlawful conditions, practice, policies, acts and omissions complained of herein no longer exist and this Court is satisfied that they will not recur;

g. Award Plaintiff the costs of this action, including reasonable attorneys' fees and

h. Grant such other and further relief as this Court deems just and proper.

Dated: New York, NY
October 13, 2017

Respectfully Submitted,

_____/s/ Tahanie A. Aboushi, Esq.

THE ABOUSHI LAW FIRM, PLLC
By: Tahanie A. Aboushi, Esq.
Attorneys for Plaintiff
1441 Broadway Suite 5036
New York, NY 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
tahanie@aboushi.com